# Wytheville.

## RATLIFF v. RATLIFF.

### June 23, 1904.

1. EQUITY—*Bill to Enforce Vendor's Lien and for Reformation—Interpleader.*—A vendor who has conveyed title retaining a lien for purchase money may, on a bill filed to enforce the lien, charge that the deed was made to the grantee alone at her solicitation, but that other persons own or claim an interest in the land by virtue of a title bond given to their ancestor; and, upon convening all the parties in interest, may ask the court to determine their rights in the land, and, if necessary, to set aside the deed he has made, and direct to whom the land shall be conveyed. In the latter respects it is in the nature of a bill of interpleader.

2. EVIDENCE—*Survivors of a Transaction—Who May Testify.*—One not an original party to the transaction which is the subject of dispute is a competent witness in his own behalf, though one of the original parties be dead. So, also, where the survivor of a transaction has testified in his own behalf, this renders competent those having an adverse interest. A survivor of a transaction is also competent when called by a party having an adverse interest, and, being competent for one purpose is competent for all purposes.

3. DESCENTS—*Equitable Estates.*—An equitable interest in real estate descends to the owner's heirs just as a legal estate.

4. FRAUD—*Deed to Defraud Creditors—Suit by Grantor to Impeach.*—A husband cannot impeach the title of his wife or her heirs to land conveyed to her at his instance in order to defraud his creditors. A court of equity will not relieve him from the consequences of his own fraud.

5. TITLE BOND—*Assignment—Interest of Assignee.*—Where a title bond for land is given to two persons jointly, and, after large payments have been made on the land, one of the obligees assigns his interest to a third person, the assignee takes the shoes of his assignor, and is entitled to an interest in the land to the extent that

he or his assignor have paid the purchase money, whether such payments were made before or after the assignment.

6. STATUTORY SEPARATE ESTATES—*Curtesy.*—A husband is not entitled to curtesy in the statutory separate estate of his wife which he has created for her benefit. He is excluded by the nature of the transaction.

Appeal from a decree of the Circuit Court of Washington county, in a suit in chancery, wherein the appellee, John B. Hamilton, was the complainant, and the appellant and others were the defendants.

*Reversed.*

The statutory separate estate referred to in the opinion was acquired under the "Smith Act," some time between 1876 and May 1, 1888.    The other facts sufficiently appear in the opinion of the court.

*Daniel Trigg* and *L. P. Summers,* for the appellant.

*White & Penn* and *H. M. Honaker,* for the appellees.

HARRISON, J., delivered the opinion of the court.

In the fall of 1886 John B. Hamilton executed to Lucinda Ratliff and John R. Ratliff, one of her sons, a title bond for a tract of land near Abingdon, Virginia, in consideration of $6,500.00, of which $3,000 was paid in cash, the residue being evidenced by the joint bonds of the vendees.  · On the 11th of January, 1887, for reasons satisfactory to the parties, this title bond and deferred purchase money bonds were surrendered to Hamilton, and an additional $1,000 was paid on the purchase, and a new title bond executed by Hamilton to Lucinda Ratliff and Floyd A. Ratliff, another son, which acknowledges the receipt of $4,000 in cash; it being provided that the residue of the pur-

chase money should be paid in four equal annual instalments, evidenced by the notes of Lucinda and Floyd A. Ratliff, and providing that the vendor should execute a good and sufficient deed as soon as the land was run off, and the notes delivered. The grantee, Lucinda Ratliff, died in the fall of 1887, leaving her husband, M. S. Ratliff, and eleven children surviving her. On the 9th of February, 1891, Floyd A. Ratliff assigned to his father, M. S. Ratliff, all interest that he might have under and by virtue of the contract or title bond, the consideration for this assignment being that the assignee should pay the balance of purchase money then due on the land, amounting to $1,816. This assignment expressly provides that it shall not apply to the interest of the assignor in the land as one of the heirs of his mother, Lucinda Ratliff.

On September 4, 1896, John B. Hamilton, the vendor in the title bond, without the knowledge or authority of the heirs of Lucinda Ratliff, conveyed the land in question to M. S. Ratliff, the husband and father of the vendees named in the title bond, reserving a vendor's lien for a small balance of purchase money, amounting to $362.46. After this deed was recorded, Hamilton, being informed that the heirs of Lucinda Ratliff would contest his right to make the deed to their father, M. S. Ratliff, filed his original bill, seeking to enforce the payment of the balance of the purchase money due to him, and convening all the parties, in order that the deed might be reformed in accordance with their respective rights. Subsequently, an amended bill was filed, bringing in additional parties, and repeating the allegations of the original bill. To these bills M. S. Ratliff filed his demurrer and answer, denying in general terms that the land was sold to Lucinda Ratliff, and insisting that all the negotiations leading up to the purchase were alone with him, and that the entire purchase money was paid by him from his own resources. Subsequently, J. M., J. R., and F. A. Ratliff, three of the adult heirs of Lucinda Ratliff, filed their answers,

asking that they be treated as cross-bills, in which they assert
that the land in question was bought and paid for by their
mother, Lucinda Ratliff; that the deed from Hamilton to M.
S. Ratliff was without authority, and praying that it be set
aside, and the heirs of Lucinda Ratliff restored to their rights
under the title bond.    M. S. Ratliff filed his demurrer and
answer to these cross-bills, reiterating the position taken in his
answer to the original and amended bills; that the land was
bought and paid for with his own means, and belonged to him.

The Circuit Court held that M. S. Ratliff could not defeat
the rights of the heirs of Lucinda Ratliff under the title bond
of January 11, 1887, and that the deed from Hamilton to M.
S. Ratliff was without authority, and must be set aside.    The
court further held that M. S. Ratliff was entitled to the interest
bought by him from F. A. Ratliff, under the assignment men-
tioned of February 9, 1891, the nature and extent of which
was fully known to him; that under this assignment he was
entitled to an undivided interest in the land in the proportion
that $1,816.00, the balance of purchase money which he then
agreed to pay, bore to $6,500.00, the whole purchase money
agreed to be paid for said land.    From this decree M. S. Rat-
liff has appealed.

The first assignment of error is to the action of the court in
overruling the demurrer of appellant to  the  original  and
amended bills.

John B. Hamilton had, upon the inducement of the appellant,
made him a deed to land which, on the face of his contract, be-
longed to other parties.    He was threatened with suit in con-
sequence of this act, and we are of opinion that in a suit to
enforce payment of his vendor's lien he had a right to convene
all parties in interest, and to ask a court of equity to determine
their  respective  rights  in  the land, and, if necessary, to set
aside the deed he had made, and direct to whom the land
should be conveyed.    The bill, in addition to seeking a satisfac-

tion of the balance of the purchase money, was in the nature of a bill of interpleader, convening adverse claimants, in order that the complainant, who occupied the position of a disinterested stake-holder, might be saved harmless. We are, therefore, of opinion that the demurrers to the original and amended bills, and also to the cross-bills, were properly overruled.

A further assignment of error is to the action of the court in not excluding the testimony of John R. and F. A. Ratliff.

John R. Ratliff was not a party to the contract or title bond which is the subject of dispute. This contract was with Lucinda Ratliff and F. A. Ratliff. Besides, M. S. Ratliff, an adverse party, having been examined for himself, John R. was thereby made competent, if otherwise incompetent. As to F. A. Ratliff, if he were incompetent, having been called as a witness by M. S. Ratliff, he was made competent for all purposes.

The fifth and sixth assignments of error seem to assert the proposition that, even though Lucinda Ratliff may have been entitled to the land in question, or a part thereof, still, as she died without having the legal title thereto, her interest was not descendible to her heirs. This position is without merit. An equitable interest in real estate descends just as a legal estate.

The remaining assignments of error call in question the respective rights of the parties in and to the land in controversy.

It appears from the record that prior to the purchase of the land in question the appellant and his family lived in Tazewell county, and that he and his wife, between them, owned in Tazewell and Buchanan counties considerable real estate, the title to the greater part of which was in his wife. Although the title to these lands was in Lucinda Ratliff, the appellant insists that, as a matter of fact, they belonged to him. His explanation of the title to these lands being in his wife, and of the title bond for the Hamilton land being in her name, is stated in his deposition as follows: "Me and Gordon Rife had been in the

mercantile business and failed, and we compromised with our creditors, and gave a deed of trust on our property, each one on our separate properties; each one was to pay his half of the indebtedness, and, upon doing so, was to be released from the other. It was recorded in Buchanan county. The court-house was burned, and those papers were burned, and I paid my part of the indebtedness, and Mr. Rife never paid any of his, and for that reason I was afraid that I would have to pay unjust money, and that was the reason why I had that bond drawn the way I did." In answer to a subsequent question with respect to the Buchanan lands, he says: "I had them conveyed to my wife because I was afraid I would have some of Gordon Rife's debts to pay." Lucinda Ratliff derived part of the lands in Tazewell county from her father's estate. It is very clear from the pleadings and evidence in the cause on behalf of the appellant, that such of said lands as she held the title to at his instance and request were conveyed to the wife for a fraudulent purpose. The appellant cannot now rely upon his own wrong to defeat the title of the wife to the Tazewell and Buchanan lands, which had been conveyed to her. He would, in effect, be asking the court to interfere, and by its decree to relieve him from the consequences of his own fraud. This a court of equity will never do. The authorities speak with one voice on this subject. *Harris* v. *Harris,* 23 Gratt. 737.

Section 2458 of the Code (1887) provides that "every bond or other writing, given with intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be entitled to, shall, as to such creditors, purchasers, or other persons, their representatives or assigns, be void." This section, as well as the unvarying decisions of this court, however, declare that, as between the parties, such a writing shall be binding and valid. *Harris* v. *Harris, supra.*

So that the lands in Tazewell and Buchanan counties, which had been conveyed to Lucinda Ratliff at the instance and request

of the appellant, belonged to her, and her heirs are entitled to an interest in the Hamilton land, to the extent that it was paid for with the proceeds of the sale of their mother's land in Tazewell and Buchanan counties, whether derived from her father or conveyed to her at the instance and request of the appellant.

Lucinda Ratliff and F. A. Ratliff were co-tenants under the title bond of January 11, 1887, executed by Hamilton for the land in question, each being, as between themselves, bound for one-half of the purchase money. Under the assignment by F. A. Ratliff of February, 1891, the appellant took his assignor's shoes, and became a tenant in common with the heirs of Lucinda Ratliff, and is entitled to an interest in the land to the extent that he has paid the purchase money. *Grove* v. *Grove,* 100 Va. 556, 42 S. E. 312. It was, therefore, error in the court to limit the interest of the appellant to the extent of the unpaid purchase money due at the date of the assignment.

It is impossible to determine from the record what proportion of the purchase money for the land in controversy was paid with the proceeds of the sale of the real estate, the title to which was in Lucinda Ratliff. It is evident that the first payment of $3,000 came from that source, for it was evidenced by the check of the purchasers of her land, which was payable to Lucinda Ratliff, and by her endorsed to John B. Hamilton, her vendor. It is also quite clear that $632.16 of the second payment of $1,000 came from that source, for it was a check of the same purchasers of her land, and went to the credit of John B. Hamilton, in bank, on the same day that the cash payment of $1,000 was made. Further than this, however, we are unable to go without danger of doing injustice. The case must be referred to a commissioner to ascertain what part of the land in controversy was paid for from the proceeds of the sale of the real estate of Lucinda Ratliff, and what proportion was paid for by the appellant, taking any additional evidence that may be necessary to facilitate the enquiry, and upon the coming in of

that report the court can determine and fix the interest in the land of each of the parties to this controversy.

There are two assignments of cross-error under Rule IX. The first of these is disposed by the views already expressed. The second is, that the court erred in holding that the appellant was entitled to curtesy in that portion of the land which belonged to the heirs of Lucinda Ratliff.

The lands in Tazewell and Buchanan counties, the title to which was in Lucinda Ratliff, constituted separate statutory estate, except the land derived from her father, and when the proceeds of those lands was reinvested under the title bond executed by Hamilton to Mrs. Ratliff, the lands thus acquired continued to be her statutory separate estate. This court has held that a husband is not entitled to curtesy in the equitable separate estate of his wife, which he has created for her benefit; that he is excluded by the nature of the transaction. *Jones* v. *Jones,* 96 Va. 749, 32 S. E. 463. We are of opinion that the reasons given in the case cited for excluding the husband from curtesy in the equitable separate estate, which he has created, with equal force deny his right to curtesy in lands that he has conveyed, or caused to be conveyed, to her without reservation of his marital rights, where such lands constitute, as in the case at bar, statutory separate estate. See note to *Jones* v. *Jones, supra,* 4 Va. Law Reg., 821-2, by the author of Burk's Separate Estates. We are, therefore, of opinion that the appellant was not entitled to curtesy in such of the Tazewell and Buchanan lands as were conveyed to Lucinda Ratliff by her husband, or by others, at his instance and request, and hence is not entitled to curtesy in that part of the Hamilton lands paid for with the proceeds of such lands.

For these reasons the decree complained of must be reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

Dissenting Opinion.

Cardwell, J., dissenting:

The doctrine that a litigant will not be heard to assert his own wrong to defeat a right claimed by another, or to defend a right he claims against the right claimed by another, has, in my judgment, no application to this case. If, in point of fact, M. S. Ratliff intended to perpetrate a fraud upon his creditors in putting the title to the lands in question here, or those in Tazewell and Buchanan counties, in his wife, Lucinda Ratliff, which were sold in her lifetime, and the proceeds of which sales went into the purchase of the lands here in question, and his wife knew of his wrongful intent and participated in it, then she is with respect to the transactions equally guilty, and the maxim *in pari delicto potior est conditio defendentis* applies to her. If, on the other hand, she was ignorant of his wrongful purpose, but did not, in fact, furnish any portion of the purchase money, she and those claiming under her are mere volunteers. As such they are in the attitude of plaintiffs, seeking specific performance of a contract, a relief which is never granted, except to a plaintiff who stands upon a contract supported by a valuable consideration. In this case the legal title is in the husband, and rightly in him to the extent that the consideration emanated from him. He asks nothing except to be let alone. Neither courts of law nor equity have jurisdiction to punish the actors in a fraudulent transaction by force of the maxim invoked in the opinion of the court. All that the courts can do is to withhold all aid in the enforcement of such contracts. Here the husband asks nothing at the hands of the court, but stands upon his legal right as the holder of the legal title, and that position should prevail until it is assailed by some one with a better equity. A volunteer has not only no better equity, but he has no equity whatever. I think the enquiry directed by the court is too narrow. The transactions should be probed to the bottom, and all the facts brought to light. Let it be

made to appear who paid for the Tazewell and Buchanan lands, and then with full knowledge of the entire case from its inception the court will be in a position to balance the equities between the parties, and with confidence determine their respective rights.

From so much of the opinion of the court, therefore, as narrows the enquiry to be made upon the case going back to the Circuit Court, so as to exclude enquiry as to who, in fact, paid the purchase money for the Tazewell and Buchanan lands, I dissent.

KEITH, P., concurs with CARDWELL, J.

*Reversed.*