## HIGGINBOTHAM v. BOGGS et al.

### (Circuit Court of Appeals, Fourth Circuit. May 2, 1916.)

### No. 1405.

**1. TRUSTS ☞72—RESULTING TRUSTS—CREATION.**
> When one person pays for land and has title made to another, a trust results in favor of the purchaser.

> [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 102, 103; Dec. Dig. ☞72.]

**2. TRUSTS ☞43(1), 88—RESULTING TRUSTS—ESTABLISHMENT.**
> Where land is paid for by one, though title is taken in the name of another, either the payment, raising a resulting trust, or an express agreement by the holder of the title to hold in trust for the real purchaser, may be established by parol.

> [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62, 130–133; Dec. Dig. ☞43(1), 88.]

**3. TRUSTS ☞86—RESULTING TRUSTS—PRESUMPTIONS.**
> Where a husband or father, on purchasing land, takes title in the name of his wife or his child, no presumption of resulting trust arises, as in case of strangers or relatives under no obligation to support.

> [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 128; Dec. Dig. ☞86.]

**4. TRUSTS ☞86—RESULTING TRUSTS—PRESUMPTION.**
> The presumption of a resulting trust may be rebutted by evidence of the circumstances or declarations by the real purchaser, who took title in the name of another, that a gift was intended to the grantee.

> [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 128; Dec. Dig. ☞86.]

**5. TRUSTS ☞81(1)—RESULTING TRUSTS—EVIDENCE.**
> In determining whether a resulting trust arises, where one purchasing land has title taken in the name of another, the close relationship of the grantee to the purchaser and the purchaser's moral obligation to support may be considered.

> [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 115; Dec. Dig. ☞81(1).]

**6. TRUSTS ☞362—RESULTING TRUSTS—DECLARATION.**
> A resulting trust will not be declared in favor of a purchaser, who had the legal title made to another for the purpose of defrauding his creditors.

> [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 560–562; Dec. Dig. ☞362.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. TRUSTS ⬥—72—RESULTING TRUSTS—CREATION.

A resulting trust, if it arises at all, must arise at the time the legal title is taken in the name of one who does not pay a consideration for the conveyance.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 102, 103; Dec. Dig. ⬥—72.]

8. TRUSTS ⬥—89(5)—RESULTING TRUSTS—ESTABLISHMENT.

Parol evidence, to establish a resulting trust, must be clear, unquestionable, and certain.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 137; Dec. Dig. ⬥—89(5).]

9. TRUSTS ⬥—372(3)—RESULTING TRUSTS—EVIDENCE—ESTABLISHMENT.

In a suit to establish a resulting trust in land, evidence *held* to show that the purchaser, who paid the consideration, had title taken in the name of an ostensible grantee for the purpose of defeating a judgment creditor, and so no resulting trust arose.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 602, 603; Dec. Dig. ⬥—372(3).]

10. TRUSTS ⬥—362—RESULTING TRUSTS—CREATION.

Where purchaser of land took title in the name of another for the purpose of defeating the collection of a judgment against him held by the state, a subsequent release of the judgment will not give rise to resulting trust, as such trust, if it arises, must do so when title vests.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 560–562; Dec. Dig. ⬥—362.]

11. TRUSTS ⬥—89(1)—RESULTING TRUSTS—EVIDENCE.

In suit to establish a resulting trust in land, title to which was transferred from the original grantee to the purchaser's sister, evidence *held* to establish that, though the purchaser was the equitable owner, he intended his sister to take the fee of the land.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 134; Dec. Dig. ⬥—89(1).]

12. TRUSTS ⬥—365(4)—RESULTING TRUSTS—RIGHT TO ASSERT—LACHES.

Where for over 22 years a purchaser of land acquiesced in the title remaining in his sister, to whom it was transferred from the original grantee, and his will affirmed such title, the heirs of the purchaser cannot thereafter assert a resulting trust in the land; it being barred by laches.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 572; Dec. Dig. ⬥—365(4).]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Suit by Jessie Boggs and others against Fannie W. Higginbotham, substituted in the place of Nancy J. Bright. From a decree for complainants (222 Fed. 714), defendant appeals. Reversed.

William W. Crump and Charles V. Meredith, both of Richmond, Va. (Conway R. Sands and Meredith & Cocke, all of Richmond, Va., on the brief), for appellant.

Marshall M. Gilliam and A. L. Holladay, both of Richmond, Va., for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WOODS, Circuit Judge. The issue in this case is whether the appellant, Fannie W. Higginbotham, holds the legal title to a tract of land of 335 acres in Henrico county, Va., as her own property, or as trustee of a resulting trust in favor of the heirs of William M. McGruder. The decision of the District Court was in favor of the complainants, claiming one-eighth interest as grandchildren of a deceased sister of McGruder. The bearing of the documentary evidence will be made clearer by setting it out in chronological order.

In 1867 the commonwealth of Virginia recovered judgments aggregating about $20,000 against Wm. M. McGruder as surety on the bond of R. H. Huff, county sheriff. On June 29, 1869, Susan C. Fisher and others conveyed a tract of 283 acres of land to Fannie Wrenn, a niece of McGruder, for the consideration of $1,800, and on September 13, 1872, another tract of 335 acres for the consideration of $1,600. The tract of 335 acres is the land in dispute.

On August 25, 1880, Fannie Wrenn executed to Wm. M. McGruder a power of attorney authorizing him to convey both tracts of land, in all 618 acres giving full discretion as to the consideration. The next day under his power of attorney McGruder executed in Fannie Wrenn's name a conveyance of the land to John T. Jones for the consideration expressed in the deed of $9,580. At the same time Jones executed a deed of trust to Henry A. Atkinson, Jr., trustee, to secure $6,333.34, the alleged balance of the purchase money. On June 11, 1881, Atkinson as trustee and McGruder as the agent of Fannie Wrenn acknowledged full payment of the balance of the purchase money and released all claim under the deed of trust. On March 3, 1884, Jones conveyed the land to Nancy J. Bright for the consideration expressed in the deed of $8,580. On March 7, 1884, the General Assembly of Virginia passed an act that no proceedings should be taken to enforce judgments like that against McGruder after the 1st of January, 1885; and on the 20th of December, 1886, McGruder compromised the judgment against him by making a small payment and was released from all liability thereon. On May 1, 1906, Nancy J. Bright conveyed a portion of the land to T. P. Davie and Jesse A. Davie, who executed a trust deed to secure $9,000 of the purchase money and interest thereon. The bonds and the notes representing this purchase money were indorsed and assigned by Nancy J. Bright to Wm. M. McGruder. In November, 1908, McGruder died, leaving his will, dated November 26, 1906, by which he undertook to bequeath the bonds and notes to certain persons and for certain purposes. The will however, contains this recital:

"Whereas, Mrs. Nancy J. Bright, recently sold a portion of her landed estate to Mr. T. Percy Davie, and held his bond for the payment of the same, dated May 1, 1906, for nine thousand ($9,000) dollars, payable in five years after date, payable to Mrs. Nancy J. Bright, and indorsed by her, and assigned to me."

The will contains no devise of the land in dispute and no intimation that McGruder regarded it as his property. After McGruder's death Mrs. Bright instituted a suit in the circuit court of Henrico county against the executors of McGruder and others interested in the bonds and notes, which resulted in a decree to the effect:

"That the assignments appearing on the back of each of the bonds and signed by Mrs. Nancy J. Bright were not made with the intention of transferring the ownership of said bonds to Wm. M. McGruder, and that therefore the legal title which passed by such assignments should be revested in the said Nancy J. Bright."

The court, however, exonerated McGruder from any fraudulent purpose in securing the assignment.

On October 7, 1909, the complainants, as the heirs of a sister of Wm. M. McGruder, brought this suit against Nancy J. Bright, alleging that when Susan C. Fisher and others conveyed to Fannie Wrenn, in 1872, McGruder paid the purchase price for the land, that all of the subsequent transfers were made at his instance, and that the grantees held the legal title in trust for him and after his death for his heirs. Nancy J. Bright died October 2, 1913, after her answer was filed, and Fannie W. Higginbotham, to whom Mrs. Bright devised the land, was made a party defendant and filed her answer.

[1, 2] When one person purchases land with his own money and has the title made to another a trust results in favor of the former. Bank v. Carrington, 7 Leigh (Va.) 566. And either the payment of the purchase money imposing a resulting trust on the holder of the legal title, or an express trust by agreement of the grantee to hold in trust for the real purchasers may be proved by parol. Young v. Holland, 117 Va. 433, 84 S. E. 637.

[3, 4] Between strangers a resulting trust is presumed against the grantee in favor of the person paying the purchase money. But if the purchaser takes the title in the name of a wife or child or other person for whom he is under some natural or legal obligation to provide, the presumption is against a resulting trust and in favor of a gift or advancement to the person named in the deed. 1 Perry on Trusts, 143; Young v. Holland, supra; Jackson v. Jackson, 91 U. S. 122, 23 L. Ed. 258. In general there is no legal or moral obligation on one brother or sister to support another, and therefore in these relations the nominal grantee will be presumed to hold under a resulting trust for the real purchaser. Madison v. Andrew, 1 Vesey, 57; 1 Perry on Trusts, 144; Harris v. McIntyre, 118 Ill. 275, 8 N. E. 182; 39 Cyc. 136. But the presumption of a resulting trust is one of fact, which may be rebutted by evidence of the circumstances or of the declaration of the purchaser that he intended a gift to the nominal grantee. Warren v. Steer, 112 Pa. 634, 5 Atl. 4; Higdon v. Higdon, 57 Miss. 264; Jackson v. Jackson, supra.

[5] Manifestly the relation of close affection or kinship, though not amounting to moral or legal obligation, is a fact to be weighed along with other evidence tending to rebut the presumption of a trust and support the inference of a gift.

[6] A resulting trust will not be declared in favor of a purchaser who had the legal title made to another for the purpose of defrauding his creditors. Almond v. Wilson, 75 Va. 613; Ratliff v. Ratliff, 102 Va. 880, 47 S. E. 1007; Sell v. West, 125 Mo. 621, 28 S. W. 969, 46 Am. St. Rep. 508, and note; Neill v. Keese, 5 Tex. 23, 51 Am. Dec. 754, and note; 1 Perry on Trusts, 165.

[7] A resulting trust, if it arises at all, must arise at the time the legal title is taken. Beecher v. Wilson, 84 Va. 813, 6 S. E. 209, 10 Am. St. Rep. 883; Miller v. Blose, 30 Grat. (Va.) 744.

[8] Parol evidence to establish a resulting trust must be clear, unquestionable, and certain. Donaghe v. Tams, 81 Va. 132; Woodward v. Sibert, 82 Va. 441. But when the payment of the purchase money by one for a conveyance made to another is established, the charge that the legal title was made to another to defeat the creditors of the purchaser must also be established by clear proof.

[9] There was a feeble effort to show that Mrs. Bright paid the purchase money when the Fishers conveyed the land to Fannie Wrenn in 1872; but the testimony proves beyond doubt that McGruder paid it. The deeds from Fannie Wrenn to Jones and from Jones to Mrs. Bright were made without valuable consideration. Mrs. Bright and McGruder lived together on the land as brother and sister, and Fannie Wrenn, their niece, was a member of the family until her marriage. McGruder cultivated the land and used it in all respects as his own, Mrs. Bright no doubt performing the household duties incident to her relation with her brother. McGruder also directed the changes of the title from Fannie Wrenn to Jones, and from Jones to Mrs. Bright, and all concerned acquiesced in full recognition of his control. His reason for getting the title out of Fannie Wrenn and into Jones, his confidential friend, was the expected marriage of Fannie Wrenn, and for getting the title out of Jones into Mrs. Bright, was the anticipated financial embarrassment of Jones. McGruder spoke of the land to his neighbors sometimes as his property and sometimes as the property of Mrs. Bright, his expressions on this subject no doubt varying as he had in mind his own control and dominion or the legal title of Mrs. Bright.

If this were all, there could be little doubt that all of the successive grantees of the land—Fannie Wrenn, Jones, and Mrs. Bright—took and held the legal title with a resulting trust in favor of McGruder, and enforceable after his death by his heirs. But inquiry into the motive of McGruder for keeping the title out of himself and in another is fatal to the claim of the complainants. An active and aggressive man in all his pursuits, it is evident that there must have been a reason cogent to him for the course he pursued. The record suggests no reason except that of preventing the collection of the large judgment in favor of the state against him; and the affirmative evidence of that motive is convincing. The mere fact of the existence of the judgment and the keeping of the title to the property for which he had paid and which was his chief asset in the names of others for so many years unexplained is strong evidence (Hickman v. Trout, 83 Va. 478, 3 S. E. 131, 20 Cyc. 449); for the judgment and the land were the two largest factors in McGruder's business life. Still stronger evidence is the fiction resorted to in the conveyance from Fannie Wrenn to John T. Jones. The arrangement was that Jones was to give his check for the cash portion to McGruder as attorney in fact for Fannie Wrenn, and McGruder was to return the check or the money collected on it. This was done to make that which was a mere fictitious consideration

appear to be a real one. Mr. Atkinson, the attorney who drew the papers and who was the trustee under the mortgage deed purporting to secure a portion of the purchase money, testified that as he understood the transaction nothing was to be paid, and that the purpose of McGruder in not having the title in himself was to prevent the collection of the judgment. Objection was made to this testimony of Atkinson as to the fraudulent intent, on the ground that it came out on a cross-examination which extended beyond the subject of the direct testimony. The objection is not well founded, since the cross-examination related to the explanation of the transaction referred to as fictitious in the direct examination. It is true that the witness intimated that he had no positive knowledge of the fraudulent intent, but he was a party to the transaction and his understanding that the trust deed made to him was a mere pretense is not without weight.

The conclusion that McGruder had the title made to another for the purpose of defrauding his creditors carries with it the finding that equity would have given no relief to him, and will give none to his heirs.

[10] The claim that the release of the judgment by the state related back to the date of all of the transactions intended to prevent the collection of the judgment and purged them of this intrinsic vice is clearly untenable. Under the authorities above cited the relations of the parties were fixed when the deeds were made. Because of the fraudulent purpose to defeat a creditor the resulting trust failed to come into existence when the purchase money was paid by McGruder. The subsequent payment or release of the judgment could not create it. If it could a debtor by fictitious transfers could conceal property, secure a settlement of his debts by means of his fraud, and then demand the restoration of his property from the holder of the legal title at the hands of a court of equity.

[11] There is another view which is just as conclusive against the complainants if we lay to one side the vice of fraud. The evidence shows plainly that, while McGruder worked and intended to control and use the land as long as he lived, he had no intention of ever claiming the fee—of asserting the legal title and ownership. He took the utmost pains to escape owning it up to the time of the conveyance of Jones to Mrs. Bright. After that and after the satisfaction of the judgment against him, when there was no business motive for him to keep the legal title in his sister, he allowed her to retain it from January, 1885, when the judgment was satisfied, until his death in 1907 —a period of 22 years. There is no evidence that in all this time he ever asked for a conveyance, or in any way indicated that he desired it. More significant still, in his will he solemnly asserts the land to be the property of Mrs. Bright, and the proceeds of the sale of a portion of it to have been transferred to him by her. If it was his property, either legally or equitably, it was by far the most valuable part of his possessions, and yet he made no devise of it. The will was a solemn affirmation that he did not hold the land adversely to Mrs. Bright, and that his use was subject to and in recognition of her title. Considering the unusually close relationship of this brother and sister, and the

absence of other family obligation on the brother, the reasonable conclusion is that, though at one time McGruder may have regarded himself, and though he may have been, the equitable owner of the land, yet he intended the conveyance from Jones to Mrs. Bright to confer upon her the full legal title, free from any trust, with the mere expectation that he would have the use of the land for the remainder of his life.

[12] Staleness is also a forceful consideration against the claim. The case of the complainants is that McGruder was the real owner, and could have required his sister, Mrs. Bright, to convey it to him at any time from 1884 until his death in 1908. After 22 years of acquiescence by him in his sister's title, followed by positive affirmation of it in his will, it is too late for his heirs to allege against it. Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718; Hanner v. Moulton, 138 U. S. 486, 11 Sup. Ct. 408, 34 L. Ed. 1032; 1 Perry on Trusts, 141.

The complainants, it is true, were not parties to the suit brought by Mrs. Bright in which the circuit court of Henrico county decreed that Mrs. Bright was the owner of the bonds and notes given by Davie for the purchase of a part of the land conveyed to her by Jones; but the decision of the state court is of great persuasive weight as to the legal principles involved, since the Supreme Court of Appeals of Virginia denied an appeal on the ground that the decree of the circuit court was plainly right.

Summing up the case in a practical way, the evidence leads to these inferences as to the relations of the parties and the status of the land: McGruder bought the land and paid the purchase money. He had the title made to Fannie Wrenn, and afterwards to his friend Jones, and then to his sister, Mrs. Bright, to protect it from the judgment against him in favor of the state. After the satisfaction of the judgment the conduct of McGruder shows that he expected to use the land and the proceeds of the sale of any of it without any objection from his sister, Mrs. Bright; but it also shows that he acquiesced in and affirmatively asserted his sister's ownership, that he had no intention of setting up a claim to the title against her, and that he intended the conveyance from Jones to her to operate as a gift, subject only to the expectation that he would use and control the land as long as he lived. There is no equity in the bill, and it must be dismissed.

Reversed.