# Richmond.

## DUGGER'S CHILDREN v. DUGGER ET ALS.

### DECEMBER 1st, 1887.

Absent, Lewis, P.

1. WITNESSES—*Competency—Husband.*—In suit by children, claiming as heirs of their mother, equitable title to property, to annul trust deed and sale made thereof since mother's decease.

HELD:

> That the father is a competent witness to prove that the grantees and purchasers had actual notice of the plaintiffs' claims.

2. PURCHASERS FOR VALUE WITHOUT NOTICE.—In said suit defendants claimed to be such purchasers. But it was *held:* That the circumstances disclosed in the record and recited in the opinion, established notice.

3. CURTESY—*Wife's separate estate—Husband's gift.*—A separate estate created by the gift, conveyance or settlement of the husband to or for his wife, whether directly or through a trustee, presumptively excludes the husband from tenancy by the curtesy in said estate. Gift from husband to his wife is construed to be for her separate use.

Appeal from decree of hustings court of Danville, rendered March 21st, 1882, in the chancery cause wherein the appellants, Lucy T. Dugger and Benjamin E. Dugger, infant children and heirs at law of Louisiana E. Dugger, deceased, who sue by D. T. Harvey, their next friend, are complainants, and Daniel Dugger, William E. Boisseau, A. Y. Stokes & Company and others, are defendants. By said decree the plaintiff's bill was dismissed, and they appealed to this court. Opinion states the case.

*Berkeley & Harrison* and *Christian & Christian,* for the appellants.

*Guy & Gilliam, Carrington & Fitzhugh, Green & Miller,* and *W. W. Gordon,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

This is an appeal from a deree of the hustings court of Danville, rendered March 21st, 1882, in a chancery cause wherein the appellants, Lucy T. Dugger and Benjamin E. Dugger, infant children of Louisana E. Dugger, deceased, who sue by D. T. Harvey, their next friend, are complainants, and Daniel Dugger, William E. Boisseau, A. Y. Stokes & Company, and others are defendants.

The suit was brought on behalf of the said two infant children of the defendant, Daniel Dugger, to set up a resulting trust in a house and lot on Main street in the town of Danville, to which they claim to be entitled, by descent, or by devise, from their mother, Louisiana E. Dugger, deceased, as the sole issue of the marriage of the said Daniel Dugger and Louisiana E. Bucktrout. The facts necessary to be stated, from the record, are as follows:

In 1865 Daniel Dugger, of Danville, married Louisiana E. Bucktrout, of Williamsburg. He owned a valuable house and lot on Main street, in Danville, which is the subject of this suit. She was an infant, and her guardian, Sidney Smith, held for her a considerable estate, principally in bonds. Upon the marriage the guardian turned over to the husband a part of the said bonds, but there was no settlement between them. These bonds were payable "to Sydney Smith, guardian," and they were delivered to Dugger without any written transfer or assignment; and not in settlement, but simply to be used as collateral to obtain credit. Dugger pledged the bonds with creditors of his to secure debts which he owed to them; but the

debts were paid, and the bonds came back to his possession. In 1866, July 28th, Dugger, who had become insolvent, conveyed the aforesaid house and lot, situated on Main street in Danville, Virginia, and certain choses in action, to Sydney Smith, trustee, to secure sundry creditors, Mrs. Louisiana E. Dugger, his wife, uniting in the deed; and in consideration of her thus relinquishing her contingent right of dower in the said house and lot conveyed, Dugger settled upon her certain personal property. Being impressed with the belief that the bonds which he had received from his wife's guardian were his property, Dugger proposed to include them in the deed to Sydney Smith, trustee, for the benefit of his creditors; but he was advised that such a course would be unjust to his wife and family; that the bonds belonged to his wife, and that they should be secured to her sole and separate use. He, therefore and thereupon, turned over, by delivery and dedication, certain of these bonds to Sydney Smith, the former guardian of his wife, with instructions to him to collect them, as attorney or agent for Mrs. Dugger, and to invest the proceeds when collected from them in the purchase of and payment for the said house and lot, in which they then resided, on the Main street in Danville, when it should be sold under the deed of trust, and to hold the same to Mrs. Dugger's sole and separate use.

The bonds so turned over, or returned, to Sydney Smith, as attorney for Mrs. Dugger, to be collected and invested and held in trust for her benefit, amounted, principal and interest, February 4th, 1867, to the sum of $3,448 57, which, with the value of the personalty which had been settled on her previously, amounted to over $4,000. This provision for his wife, thus openly made by Dugger, out of a part only of her maiden property and partly in consideration of her relinquishment of her right of contingent dower in the house and lot conveyed in trust for the benefit of Dugger's creditors, was known to his creditors, the chief of whom were John A. Smith, Sutherlin, and Patrick, who advised and actively aided in having the settle-

ment effected; and no creditor whose debt existed at the time of the settlement has ever questioned its validity.

In execution of the deed of trust of July 28th, 1866, from Dugger to Sydney Smith to secure Dugger's creditors, the said trustee on the fourth day of February, 1867, sold the house and lot on Main street, in Danville, at public auction, which, by previous arrangement, was bought by John A. Smith, for Mrs. Louisiana E. Dugger, at the price of $4,000 one-fourth cash, the balance at six and twelve months; John A. Smith purchased the property to protect himself, Patrick and Sutherlin (all of whom were endorsers for Dugger, and secured by the trust deed) with the understanding that the price bid by him should be paid by Sydney Smith out of the bonds and other separate estate of Mrs. Dugger, and that thereupon, the property should be conveyed to her, or her use, the object of all parties being to protect the creditors to amount of the purchase money, and at the same time to effect the arrangement for Mr. Dugger's benefit. On the day after the sale, William E. Boisseau (appellee) prepared in his own hand-writing a contract reciting that John A. Smith had purchased the property for Mrs. Dugger's benefit, and she signed it. John A. Smith took an imperfect deed to the property from Sydney Smith, trustee, and held it as security for the payment of the purchase money by Mrs. Dugger, or by Sydney Smith for her; but he never put the deed on record; and, in fact, after the bulk of the purchase money had been paid, he ceased to consider himself interested in the matter.

Mrs. Dugger died in 1870, but prior to her death, Sydney Smith, as her agent, out of her separate estate arising from collections of her bonds in his hands, paid all the purchase money, except a small balance, to himself as trustee; and still held in his hands bonds and other separate estate of Mrs. Dugger, more than enough to cover the small unpaid balance, which she supposed he had paid, as she left a will, dated 28th January, 1868, devising this property in question to her then

only child, as "my house and lot on Main street in Danville." This will was offered for probate by her mother, but Daniel Dugger resisted its probate, and it was never acted upon by the court. If this will is valid, the appellants are tenants in common of the property as devisee and pretermitted child of the testatrix; if the will is invalid, they take as coparceners, being the only heirs at law of the decedent.

Daniel Dugger continued to live on the property after his wife's death, which occurred in 1870, until 1879; meanwhile, the legal title was outstanding in Sydney Smith, trustee, while the equitable title had vested in the children and heirs of Mrs. Dugger.

In 1867, Daniel Dugger became a bankrupt. In the schedule filed by him in the bankrupt court, he made no mention of these choses in action held by Sydney Smith in trust for Mrs. Dugger, nor of any interest owned or claimed by him in this house and lot; and, up to his wife's death, he claimed no interest in either. After her death, however, he became possessed with the idea, that, as heir of his deceased wife, or by virtue of his marital rights, he was entitled to the house and lot for which her money had paid, as well as to the residue of the bonds held by Sydney Smith, and he began his efforts to obtain a conveyance from Sydney Smith, trustee, of the legal title to the house and lot, efforts in which he was counselled and aided actively by William E. Boisseau, to whom he was largely indebted. Sydney Smith knew that Dugger was not entitled to have a deed, and for many years he resisted Dugger's importunities, and refused to give to him a deed for the house and lot, upon the express ground that it had been devised by Mrs. Dugger's will, or descended by law upon her infant children; but, at last in a moment of weakness, April 16th, 1879, (*nine* years after Mrs. Dugger's death, and *twelve* years after the purchase of the property with Mrs. Dugger's money and expressly for her benefit,) he conveyed the property to Daniel Dugger, as he says both in his answer and in his deposition, "at the earnest

request of the father of the said complainants, believing that he would do nothing to injure them or their interests." Soon after Dugger received this deed, to-wit, June 5th, 1879, he conveyed part of this property to E. B. Withers, trustee, to secure A. Y. Stokes & Company payment of the sum $1,691 76—a part of which was an old debt of Dugger's, which was barred both by the statute of limitations and by his discharge in bankruptcy, and the residue a debt due by him as agent, in whole or in part. By deed dated June 25th, 1879, Dugger conveyed the rest of this property (the house and lot) to P. H. Boisseau, in trust to secure payment of $3,694 55 to William E. Boisseau, one of the appellees.

In November, 1879, a creditor's bill was brought by judgment creditors of Daniel Dugger to sell this house and lot and subject it to payment of his debts. In 1881, a decree of sale was made and commissioners were ordered to sell the property, who accordingly on the — day of March, 1881, sold to A. Y. Stokes & Company for $1,600, and to William E. Boisseau for $3,650, the house and lot; which sale was confirmed by the court, although the property was valued by the commissioners in the cause at over $10,000. Prior to this sale, this suit was brought, and a *lis pendens* filed, and notice of the Dugger children's claim given publicly so as to deter all bidders except the said grantees in the said deeds of trust, and the counsel for the said children gave personal notice of their rights, prior to the sale, to each of the commissioners of sale, trustees, and creditors secured by the deeds of trust.

The bill in this cause alleges that Mrs. Louisiana E. Dugger had a perfect equitable title to the house and lot in question, which, on her death, descended to her children, the appellants; that Sydney Smith, trustee, held the legal title subject to the trust for her and their benefit; that Daniel Dugger procured the conveyance of that legal title (whether by fraud or under a mistake, is immaterial,) with full notice and knowledge of these equities; that the trustees and deed of trust creditors,

William E. Boisseau and A. Y. Stokes & Company had like notice and knowledge at the times when they took their deeds, respectively; and the bill prays that the deed from Sydney Smith, trustee, to D. Dugger, and the deeds of trust from Dugger to Withers, trustee, and to P. H. Boisseau, trustee, may be declared null and void; that the judicial sale of the property may be set aside, and that the trust set up by the children, complainants, may be established by decree of the court, and for general relief.

All the defendants answered the bill and the defendants, William E. Boisseau and A. Y. Stokes & Company, setting up the defence that they are innocent purchasers for value and without notice. Many depositions were taken and exhibits filed, and the court by its decree of March 21st, 1882, dismissed the bill, holding that Daniel Dugger was not, for any purpose, a competent witness for the complainants; that Mrs. Dugger's equity was not proven, and that neither William E. Boisseau nor A. Y. Stokes & Company had notice of her equity (if any she had) at the time when they took their deeds of trust, respectively.

The complainants, as the heirs of Mrs. Dugger, are seeking to set aside these deeds of trust made by Daniel Dugger for the benefit of William E. Bossieau, and of Stokes & Co. and the subsequent conveyances; and to maintain their suit they must show, *first,* a good equitable title; and *second,* that Boisseau and Stokes & Co. took with notice of that equity, or that, for any peculiar reason, such notice, in this case, was not necessary. They introduced their father, Daniel Dugger, as a witness on both points; but the court held him to be incompetent on both points.

A husband may not testify when his wife is a party, nor for or against her interest. 1 Greenleaf's Ev., § 334–'7; *Murphy's Adm'r* v. *Carter*, 23 Gratt., 487; *Stein* v. *Bowman*, 13 Peters, 221. The statute of Virginia, Code 1873, chap. 172, § 22, in respect to the competency of husband and wife as witnesses

*for* or *against* each other during coveture, or after its termination, would not exclude Dugger as a witness in this suit brought by the children and heirs of the deceased wife to recover real estate devised or descended to them from her; because the deceased wife was never a party to the suit and had no interest in it; had been dead ten years before the suit was brought, and her personal representative was not a party; and Dugger was not called as a witness *for* or *against* Mrs. Dugger's interest in any sense; or to testify as to facts or information derived or learned from the consort during coverture; or through the medium of the confidence which the conjugal relation inspires, even after such relation is terminated by death or divorce. 1 Wharton on Ev., § 429; 1 Greenleaf's Ev., § 254 and cases cited. Dugger was objected to and excluded as a witness because he had been Mrs. Dugger's husband. There can be no question as to his competency as a witness for complainants to prove facts (such as notice to Boisseau) which came to his knowledge after his wife's death and facts regarding transactions between him and others long after her death. It cannot be maintained that, in a suit between third parties, a man cannot testify at all, even as to transactions occurring long after his wife's death, because the property in controversy once belonged to his wife. Dugger's wife being dead, and in no sense a party, or having interest in, or connection with, the suit, Dugger was certainly competent to prove notice of the equitable title of the complainants to Boisseau; and to exclude him altogether, and for all purposes, as a witness to facts occurring long after his wife's death between him and other parties and to decide the case, as the court did, with its eyes shut to Dugger's entire testimony, was a wrong to the appellants; and the court should have admitted his testimony and have weighed it, under the circumstances. But there is abundant evidence, without the aid of Dugger's testimony, to prove the delivery of the bonds to Sydney Smith for Mrs. Dugger's benefit, the agreement under which John A. Smith bought the

house and lot and the source from which the payments were derived. These points are all clearly and fully proved by the answer and deposition of Sidney Smith; by the answer and deposition of John A. Smith; and, expressly, by the papers drawn and executed by the parties at and after the purchase, and especially by the agreement drawn by William E. Boisseau himself, setting forth that the property was bought for her, and would be held for her sole and separate use when she, or Sydney Smith for her, should pay the purchase money; and by the receipts, calculations, and endorsements made by William E. Bossieau upon the papers. All that was ever paid upon the property was paid by Sidney Smith out of the bonds he held in trust for her and out of her separate estate, except the small payments of balance due made by Dugger out of the proceeds of sale of his wife's separate estate in household furniture, piano, &c., which he had settled upon her in consideration of her relinquishment of dower in the deed of trust to secure his creditors.

William E. Boisseau was a relative of Dugger, and his intimate friend and adviser, and had an intimate knowledge of all the affairs of the family; and in 1871 and 1875, Dugger had become largely indebted to Boisseau upon divers usurious loans; and, as Dugger had become insolvent, Boisseau had no prospect of obtaining payment, except from this house and lot. Hence, for many years he persistently importuned Sydney Smith to convey the property either to Dugger, or to him, by virtue of an assignment from Dugger, which Sydney Smith steadily refused to do, for the reason that the property belonged to Mrs. Dugger's infant children, as they, both Boisseau and Dugger, knew. After resisting the devices and importunities of Dugger and Boisseau for nine years, Sydney Smith finally gave up the effort to protect the right of the infants, and made a deed to Dugger, believing, as he says in his answer, that he would do nothing to the injury of his children or their interests. Almost immediately, Dugger gave a deed of trust upon

the property to secure William E. Boisseau a large and usurious debt. Boisseau wrote the agreement in 1867, directly after the purchase of the house and lot by John A. Smith, reciting that it had been bought for Mrs. Dugger's benefit; and ten years later, we find his calculations upon the very paper of how much was the unpaid balance on Mrs. Dugger's purchase; yet he claims to have taken as an innocent purchaser, under the deed of trust, in 1879, without notice of Mrs. Dugger's equitable title and the claim of her children and heirs at law to the property.

Judge John D. Blackwell says that Dugger showed him the deed which he had obtained from Sydney Smith, and asked him to examine it, which he did; and "a day or two thereafter, Boisseau asked me what I thought of the deed, and whether Daniel (Dugger's) title to the property was good. I told him that I supposed it was, and that the deed was a valid deed. He seemed to doubt this, and intimated substantially, (though I do not remember what words he used) that Daniel's title to the property was not clear, and that he would not be able, he feared, to borrow money on it, *as his children might have some claims upon it."* The children could only claim through their mother; her only right was under the contract which Boisseau wrote in 1867, and the payments made in pursuance of it; and this admission made by Boisseau, only a month before he took his deed of trust, shows that he then remembered the agreement, and that the arrangement under it for Mrs. Dugger's benefit had been carried into effect.

The evidence in this record is replete and irresistible to prove that William E. Boisseau knew and was intimately acquainted with Mrs. Dugger's equitable title to the property, by the very contract which he himself wrote, and by the arrangement which he advised, and participated in carrying into effect; and that he was advised and apprehensive of the equity of the complainants, as the children, heirs, or devisees of Mrs. Dugger, when he took his deed of trust.

Neither Boisseau nor A. Y. Stokes & Co. can pretend to be innocent purchasers, for value and without notice, at the judicial sale, March, 1881, under a decree entered in the creditor's suit of *Robinson* v. *Dugger*, because the *lis pendens* was filed prior to the said sale, and both Boisseau and Stokes & Co. and their trustees, and commissioners of sale, were each and all expressly notified of the pending suit and equitable claim of the complainants. The appellees, A. Y. Stokes & Co., claim protection under their deed of trust of June 5th, 1879, as innocent purchasers for value and without notice of the equity of the complainants.

The record clearly shows that A. Y. Stokes & Company are not *bona fide* purchasers, and are chargeable with *constructive* notice, if not, indeed, with *actual* notice. There were many circumstances to put them upon inquiry as to the title of the infant children of Mrs. Dugger to this house and lot. In 1867, when Dugger went into bankruptcy, he owed Stokes & Company several hundred dollars. In 1868, Stokes & Company dealt with Dugger as agent for his wife, and therefore had notice of her having a separate estate. When he asks them again for credit in April, 1879, they required as a condition that he should assume to pay these worthless debts. Stokes & Company in their answer admit that the debt contracted May 1st, 1879, was advanced chiefly in consideration of Dugger's reassuming the old debt barred by bankruptcy and that contracted as agent, and no deed of trust was required or expected to be given for these debts, but a month later Dugger sought a further advance of $5,000, and Stokes and Company agreed to make it, provided the said advance of $5,000 together with the old debts should be secured by a deed of trust upon this house and lot, for which Dugger exhibited to them the deed of April 16th, 1879, which he had just obtained from Sydney Smith, and provided Dugger's title should be found, upon examination, to be satisfactory to their counsel. Stokes & Company having an eye to the security to be afforded by this house

and lot had the title examined by Messrs. Withers and Barksdale, who reported it bad, and therefore Stokes & Company refused to loan or advance the $5,000; but, as what was already done could not be undone, they then sought and obtained a deed of trust to secure the debts, old and new, already contracted.

In the language of the petition, Stokes & Company were in a most fortunate position; they had just notice enough to prevent their lending more, and not quite notice enough to forbid their securing what was already lent. Dugger swears, pointedly and positively, that he did communicate the facts of his children's title to both A. Y. Stokes & Company, and Withers & Barksdale, the counsel and the trustees of A. Y. Stokes & Company. Before A. Y. Stokes & Company took the deed of trust, they were put upon inquiry as to the title, yet they made no inquiry; if they had made the least, they would have discovered all the facts of the title of Dugger's children, because the parties to whom they must in reason have applied for information, were John A. Smith and Sydney Smith, who, it was recited on the face of the deed of April 16th, 1879, had bought and sold the property, respectively, at the sale of February 4th, 1867, and either of these gentlemen would have advised them fully of the title and claim of the Dugger children. Both A. Y. Stokes & Company and Withers, trustee, and their counsel had examined and found that Dugger's title to the property was bad; that it had been bought prior to his bankruptcy, and had not been surrendered to his assignee or disclosed to the bankrupt court; that Stokes & Company had dealt with Dugger after his bankruptcy, as agent for his wife, while he was living in this house and lot, as her separate property and not his own, and it cannot be believed that Stokes & Company would have credited Dugger agent for Mrs. Dugger without knowing what entitled Mrs. Dugger to credit.

After her death Dugger claimed to be entitled to the property as her heir; but this was a mistake of law and not of fact.

The trustee, Withers, as counsel for A. Y. Stokes & Co., had examined and reported the title of Dugger to be bad; and Barksdale, of counsel for A. Y. Stokes & Co., had examined the title and decided not to pass it; and he admits, in his deposition, that he had received, when a clerk for E. E. Bouldin, the following letter, dated April 9th, 1873, in answer to one written by Mr. Barksdale himself to Sidney Smith, dated April 8th, 1873, setting forth Daniel Dugger's claim that the property had not been bought with his wife's separate estate: "You will observe that J. A. Smith bought the house for Mrs. Dugger, and the money which he paid, to-wit., $3,002 00, arose from collections on Mrs. D.'s bonds, and collected after the execution of Dugger's deed to his creditors, with the full knowledge and consent of Dugger, and from the sales of some of the personal property Dugger conveyed to his wife in consideration of her relinquishing title to dower in the house. I remember Mrs. D. sold her piano and applied the proceeds toward paying for the house." This was six years prior to the transaction with A. Y. Stokes & Co. Did not A. Y. Stokes & Co. shut their eyes and their ears to the inlet of information to which the deed, under which they seek to shelter themselves, plainly, on its face and by its recitals, directed them? 2 Minor's Inst., 989, (889); *Burwell* v. *Fauber*, 21 Gratt., 463, and cases cited; *Brush* v. *Ware*, 15 Peters, 111.

Stokes & Co. being bankrupt creditors of Dugger, cannot innocently, or ignorantly of notice, secure their bankrupt debt by a deed of trust upon property which they knew Dugger had fraudulently withheld from his assignee in bankruptcy if the property, or any interest in it, in truth belonged to him. When Mrs. Dugger died, in 1870, she had not fully paid for the property, and therefore was not entitled to a deed, though she supposed she had done so by her agent, Sydney Smith, who had her money dedicated for this purpose. She left two children, infants of tender years, who were helpless to secure their rights, and whose father, aided by William E. Boisseau,

his usurious creditor, set himself at once to prevent their title from being shown by resisting the probate of their mother's will, and by striving to get a deed to himself, in which, after nine years of importunity, and positive denial upon the ground that the property belonged to his infant children, he succeeded. Secret equities, it is true, cannot prevail against purchasers for value and without notice; yet as Dugger, the vendor, had not the title of these infants, his deed could not convey it; had the appellants been of age it might have been otherwise. But when guilty of no laches, to have, then stripped by an insolvent father and a weak or improvident trustee, for the benefit of Boisseau, who knew their interest, and of A. Y. Stokes & Co., who had their attention called by every circumstance to make inquiry, yet abstained from it, would do violence to the favorite doctrine that courts of equity will protect infants.

Daniel Dugger did not acquire an estate by the *curtesy* at his wife's death, in this property. Daniel Dugger in 1866, was insolvent, heavily in debt, and upon the eve of bankruptcy. He assigned all that he had to a trustee to secure his creditors. And he settled certain personalty upon his wife in consideration of her joining in the deed of trust and relinquishing her contingent right of dower. Then he turned over to Sydney Smith, as agent for his wife, certain bonds and other evidences of debt, to which he had marital rights as her husband, partly in his hands, and partly in Sydney Smith's hands, to be collected by Sydney Smith for Mrs. Dugger, and the proceeds to be used in the purchase and payment of the purchase money of the house and lot for Mrs. Dugger, when it should be sold by the trustee. Even if Dugger had reduced these bonds into possession by actually collecting the money due on them, and had turned over the money to Sydney Smith, for the benefit of Mrs. Dugger, the gift or settlement thus executed would have been valid against Dugger himself, and against the appellees, who are subsequent purchasers with notice. The only persons who could assail it were creditors existing in 1866–7, and they

acquiesced. A gift by husband to wife is construed to be for her separate use. *Leake* v. *Benson*, 29th Gratt., 156; *Garland* v. *Pamplin*, 32 Gratt., 314. The gift or settlement made by Dugger to Sydney Smith for Mrs. Dugger created, *ipso facto*, a separate estate in her. 2 Minor's Inst., 353, (318); *Irvine* v. *Greever*, 32 Gratt., 419; 1 Bishop on "Law of Married Women," § 838. A separate estate, created by the gift, conveyance, or settlement by the husband to or for his wife, whether directly or through a trustee, presumptively excludes the estate by curtesy of the husband. *Irvine* v. *Greever, supra; Rigler* v. *Cloud*, 14 Penn. St., 361. When Dugger made the settlement upon his wife, a child was already born of the marriage, and his right to curtesy assured, he cannot have intended to reserve any estate in himself, as that would defeat the very object of the settlement. Hence, his creditors cannot claim it under the deeds of trust.

The decree of the hustings court of Danville appealed from is wholly erroneous, and the same is reversed and annulled. The bill of the appellants must be reinstated in the court below, and they are entitled to the relief prayed for.

Decree reversed.