# CHARLESTON.

### DEPUE v. MILLER.

Submitted June 9, 1908.   Decided February 3, 1909.

1. HUSBAND AND WIFE—*Conveyances Between.*

    If a husband convey land directly to his wife, and she, in turn, attempt to reconvey it directly to him, by executing a deed to him, and, after her death, he convey it to a third person, and then die, the equitable title is in the heirs of the wife by descent and the legal title in such third person or his successors in title. (p. 124.)

2. APPEAL AND ERROR—*Review—Presumption in Favor of Correctness of Decision.*

    A general demurrer to a bill in equity challenges its sufficiency in all respects; and a decree sustaining such a demurrer is presumed, in the appellate court, to rest upon any sufficient ground disclosed by the bill, even though it was not assigned in writing, as a ground of demurrer, while others, not well taken, were.   (p. 124.)

3. SAME—*Wrong Reason for Correct Decision.*

    A sound decree, sustaining a demurrer, should not be reversed merely because the trial court assigned an erroneous or incorrect reason therefor. (p. 125.)

4. EQUITY—*Jurisdiction—Equitable Title.*

    A purely equitable title cannot be maintained in a court of law, and, for that reason, all relief, respecting the same, must be sought in a court of equity.  (p. 125.)

5. LIMITATIONS OF ACTIONS—*Equitable Rights.*

    The statute of limitations never runs against a right, the vindication of which belongs to the exclusive jurisdiction of the equity courts.  (p. 125.)

6. EQUITY—*Adverse Possession—Legal Estates—Recognition.*

    Courts of equity recognize legal estates and titles, and in such courts, such titles prevail over equitable ones. A title to land, acquired by adverse possession, is respected in courts of equity as well as in courts of law. (p. 124.)

7. SAME—*Laches.*

Laches will bar a purely equitable demand, and the period of delay allowed depends upon the peculiar circumstances of the case. (p. 124.)

8. SAME.

If the right of the plaintiff· is clear and not dependent upon oral evidence, and no injury or prejudice to the defendant has resulted from the delay, as by the death of parties, change of conditions, loss of evidence, or the like, the cause of ·action is not barred by laches, unless ,the lapse of time and the circumstances are such as to raise a presumption of intent, on the part of the plaintiff, to abandon or relinquish the right. (p. 128.)

9. SAME.

Mere forbearance to compel rendition of a just debt or other right, the existence of which is clear beyond doubt, does not prejudice the party from whom it is due, and it is not inequitable to enforce rendition thereof after long delay; but if the length of time be long enough in itself, or with the aid of circumstances and conduct, to satisfy the chancellor that the plaintiff had abandoned his right before he brought suit to enforce it, his demand will be regarded as stale and lost by laches. (p. 128.)

10. SAME.

Delay, for a period less than twenty years, in the assertion of an exclusively equitable demand, fully proven by documentary evidence, under circumstances not in any way operating to the prejudice of defendants, and tending, to negative the inference of intent on the part of the plaintiff to abandon or relinquish the right, will not bar relief. (p. 129.)

11. SAME.

Moral as well as legal considerations, such as ignorance of law or regard for the feelings of relatives, will be considered and given weight in determining whether the plaintiff has abandoned his cause of action; but such considerations do not relieve from, or stay, the statute of limitations, nor excuse delay, working prejudice by death of parties, loss of evidence or other similar circumstances. (p. 130.)

12. CURTESY—*Estates Subject to.*

A husband has an estate by the curtesy, after the death of his wife, in lands which he had voluntarily settled upon her, if he did not, in express terms or by plain implication, relinquish such right in the instrument of conveyance. (p. 126.)

13. SAME.

As the husband's estate by the curtesy in his wife's real estate is given by the law for reasons of public policy, and not created

by contract between the husband and wife, no presumption of
intention to preclude it arises from the mere fact of a convey-
ance from the former to the latter, however it may have been
effected.   (p. 126.)

14.· EQUITY—*Bill—Multifariousness.*

If under the circumstances stated in point one of this syllabus,
the husband, after the death of the wife, has conveyed a portion
of the land to persons who have, in turn, conveyed it, in separate
portions, to others, so that it constitutes two tracts claimed by
different persons, the heirs may assert their rights as to both of
such tracts against all the interested parties in a single suit.
(p. 124.)

Appeal from Circuit Court, Roane County.

Bill by Hal. H. Depue and others against H. W. Miller and
others.   Decree. for defendants, and complainants appeal.

*Reversed and Remanded.*

. CUNNINGHAM & HARPER, for appellants.

PENDLETON & BOGGESS, for appellees.

POFFENBARGER, JUDGE:   .

In the circuit court of Roane county a demurrer to the bill
of Hal H. Depue and others, heirs at law of Henry Depue, was
sustained and the bill dismissed.   From this decree the plain-
tiffs have appealed.

The object of the suit is the cancellation of a number of deeds
to clear the alleged title of the plaintiffs from cloud, and obtain
an accounting for timber taken from the land.   They are out
of possession, but the bill proceeds upon the theory of an equit-
able title only in the plaintiffs which will not sustain an action
at law for the recovery of possession.

The facts alleged are substantially as follows:   The ancestor
being the owner of two tracts of land, the home place contain-
ing 275 acres and the Ward land containing 433 acres, made
a deed, on the 21st day of December, 1880, by which he con-
veyed both of said. tracts directly to his wife, Ann B. C. Depue.
Thereafter they resided together on the home place, until the
death of the wife about July 19, 1889; but, on the 25th day of
May, 1889, about two months before her death, the wife at-
tempted directly to reconvey all the land back to her husband. .
In neither transaction was there a conveyance from both husband
and wife to a trustee and then a conveyance by the trustee back

to one of them. More than two years after the death of the wife, the husband, by deed, dated October 2, 1891, conveyed 103 acres out of the 433 acre tract to Julia A. Bridwell and Walter Bridwell. On the 9th day of June, 1892, the Bridwells conveyed to John C. and Ira S. Bartlett 35¾ acres of the land so conveyed to them. On the residue thereof, they executed a deed of trust to Walter Pendlton, trustee, to secure a debt due to H. W. Miller, under which it was sold, Miller purchasing it. On February 23, 1903, the Bartletts conveyed their part of the 103 acre tract and some other land to Sidney Wine, who has possession thereof, while the other is in the possession of Miller. Both tracts have been denuded of their timber by these purchasers. Henry Depue died about the third day of January, 1907, and this suit was commenced on the 16th day of February, 1907.

If it shall appear that the plaintiffs have only an equitable title to the land, a court of equity is the only forum in which it can be vindicated, and the bill should have been entertained, unless it is multifarious or relief is barred by laches. No other conceivable grounds of defense appear on its face. If, on the contrary, they have the legal title, giving a right of action at law, they have no standing in a court of equity to recover possession, for they do not need its aid, nor to remove a cloud from the title because they are out of possession. In order to maintain a bill to remove cloud from title, the plaintiff must have not only the legal title, but possession of the land as well. *Mackey* v. *Maxin,* 63 W. Va. 14 (59 S. E. 742) ; *Harr* v. *Shaffer,* 45 W. Va. 709; *Smith* v. *O'Keefe,* 43 W. Va. 172; *Moore* v. *McNutt,* 41 W. Va. 695.

Indubitably the deed from Henry Depue to his wife vested in her the equitable title to the land. *McKenzie* v. *Ohio*'*River R. R. Co.,* 27 W. Va. 306; and the deed from the wife back to the husband was utterly void. *Smith* v. *Vineyard,* 58 W. Va. 98; *Austin* v. *Brown,* 37 W. Va. 634; *Cecil* v. *Clark,* 44 W. Va. 659. Obviously at the date of the death of the wife she held the equitable title and the husband the legal title. On her death, the former went to the plaintiffs by descent. If the legal title remained in the husband until his death, it also passed to them on his death, and, the legal and equitable titles being so united in them, their remedy at law would be clear and adequate.

But, as to the land involved here, he conveyed that title to the Bridwells, long before he died. Though he may have had no moral right to do. so, he had the power, and did it. Though the conveyance was in violation of the trust, he made it, and his deed passed such title as he had. *Atkinson* v. *College,* 54 W. Va. 32, 43; *Patterson* v. *Horsley,* 29 Grat. 262. This being true, the legal and beneficial estates remained separate after the death of Henry Depue, the former in the hands of the grantees, immediate and remote, and the latter in the hands of the heirs; and we have the situation presented in the case of *Blake* v. *O'N[e]al,* 63 W. Va. 483 (61 S. E. 410). Not having the legal title, the plaintiffs are utterly unable to obtain standing in a court of law to test the right of possession and title, and are wholly without remedy elsewhere than in a court of equity. In all such cases, there is of necessity jurisdiction in equity. *Moore* v. *McNutt,* 41 W. Va. 695; *Blake* v. *O'Neal,* cited; *Kinsport* v. *Rawson,* 36 W. Va. 242; *Swick* v. *Rease,* 62 W. Va. 557, 560.

Multifariousness, charged against the bill, would preclude an adjudication on the merits, if sustained, but we are of the opinion that the plaintiffs could properly proceed against both tracts of land in one suit. Their demand as to each is founded upon the same title, and the primary relief sought as to each is the same. The differences relate merely to the parties defendant and the subsidiary or sequential matter of accounting. *Moore* v. *McNutt,* 41 W. Va. 695 has been invoked as a precedent, applying the doctrine of multifariousness under the conditions here presented, but there are material differences which comparison will reveal. All the defendants are alike interested in the vital questions presented, title, appropriateness of the remedy, and sufficiency of the bill. In *Moore* v. *McNutt,* the titles were strange and hostile. We think *Gaines* v. *Chew,* 2 Howard (U. S.) 619, in which the objection was overruled, is more in accord with this case in its facts, circumstances and relation of parties.

More than fifteen years elapsed between the date of the deed to the Bridwells and the bringing of this suit, and, on this disclosure, the defense of laches is asserted here in argument, but was not brought to the attention of the court below by any written assignment thereof as a ground of demurrer. That this defense may be raised in this state by a demurrer, has been long

since firmly settled. *Whittaker* v. *S. West Virginia &c. Co.,* 34 W. Va. 217; Hogg's Eq. Prin. p. 419; Hogg's Eq. Proced., sec. 304. Failure to assign laches as a ground of demurrer is made the basis of a contention that it was not passed upon by the trial court. The statutory rule, declared in section 29 of chapter 125 of the Code, would not apply for the reason, that certain other grounds were assigned, if it were ever applicable to demurrers in equity. But it affects only demurrers at law. *Hays* v. *Heatherly,* 36 W. Va. 613, 619. No causes of demurrer need be assigned in equity cases. It suffices to say the bill is not sufficient in law. *Cook* v. *Dorsey,* 38 W. Va. 196. As such a demurrer challenges the sufficiency of the bill, it makes all the reasons available on the hearing. The trial court sustained the demurrer to this bill, because, in its opinion, there is an adequate remedy at law, as we perceive from the terms of the decree, saving to the plaintiffs their right of action at law. While this, as we have indicated, was an erroneous view of the status of the parties, it amounts only to the assignment of an erroneous reason for a correct decree, if the bar of laches exists, which does not vitiate it. If the judgment, decision or ruling of the trial court is correct on any legal ground, it will be affirmed although the reasons assigned by the court below are erroneous. *Ballard* v. *Chewning,* 49 W. Va. 508; *Easley* v. *Craddock,* 4 Rand. 423; *Newell* v. *Wood,* 1 Munf. 555; *Silsby* v. *Foote,* 14 How. (U. S.) 219; *Corning* v. *Troy &c. Factory,* 15 How. (U. S.) 451. A correct ruling upon a demurrer will be sustained, though an insufficient reason for it has been stated. *Tatum* v. *Tatum,* 111 Ala. 209; *Sechrist* v. *Rialto Irrigation Dist.,* 129 Cal. 640.

Having concluded, upon the authorities and principles above stated, that the defense of laches was raised by the demurrer, it becomes necessary to determine whether it appears upon the face of the bill. The demand is purely an equitable one. In other words, it is cognizable only in a court of equity as we have stated. The statute of limitations, therefore, does not apply, and, in such cases, courts of equity do not recognize, and are not controlled by, the period of limitation fixed by the statute. *Newberger* v. *Wells,* 51 W. Va. 624. Whether relief in equity is precluded by the delay is determined by the court, in such cases, according to equitable rules and principles. *Cranmer* v.

*McSwords,* 24 W. Va. 594. The bill presents no element of contract between the plaintiffs and the defendants, respecting the equitable title. They derived that by inheritance from their mother who was no party to the deed executed to the Bridwells. The defendants contracted with the father alone. An allegation in the bill indicates the existence of an impression or belief, on the part of the plaintiffs, that they had no right of action or remedy at law or in equity until after the death of their father, and, under the principles declared in *McNeeley* v. *South Penn Oil Co.,* 52 W. Va. 616, they were not bound to sue until after the death of the father, if he had an estate by the curtesy in the land. Having voluntarily settled the land upon his wife, by the deed executed to her, he had no such estate, as tested by certain Virginia decisions. *Sayers* v. *Wall,* 26 Grat. 354; *Irvine* v. *Greever,* 32 Grat. 411; *Dugger* v. *Dugger,* 84 Va. 130; *Jones* v. *Jones,* 96 Va. 753; *Ratliff* v. *Ratliff,* 102 Va. 887. However, none of these decisions are binding upon us and they are against the great weight of authority throughout the country. In no other state, so far as we have observed, do the courts so hold. There are some decisions, construing deeds and wills, in which the terms used plainly indicate intention to exclude the husband from curtesy, and give effect to such intent. *Rigler* v. *Cloud,* 14 Pa. St. 361; *Stokes* v. *McKibbin,* 13 Pa. St. 267; *McCulloch* v. *Valentine,* 24 Neb. 215; *Poole* v. *Blakie,* 53 Ill. 495. But when there are no such terms in the deed from husband to wife or to a trustee for her separate use, he is not deprived of his curtesy anywhere except in Virginia. 8 Am. & Eng. Ency. Law 522; *Ogden* v. *Ogden,* 60 Ark. 70; *Deming* v. *Miles,* 35 Neb. 739; *Tremmel* v. *Keibolt,* 6 Mo. App. 549, affirmed in 75 Mo. 255; *Sollan* v. *Soltan,* 93 Mo. 307; *Meachman* v. *Bunting,* 156 Ill. 586 (28 L. R. A. 618) ; Kerr Real Prop. p. 682, sec. 850; 12 Cyc. 1010-11. Curtesy is an estate given by the law for weighty reasons of public policy, not by mere contract. It aids the father in maintaining, caring for and controlling his children in case of the death of the mother. Such power is given for public as well as private benefit. Believing the general rule more consonant with reason and the principles of law, and better sustained by authority, than that declared by the Virginia court, we adopt it and hold that the grantor in the deed under consideration did not relinquish his curtesy. Reputa-

ble courts have held that, under such circumstances, as are disclosed here, the remainderman may sue in equity to remove cloud from his title, before the expiration of the life estate. *Hogan* v. *Kurtz,* 94 U. S. 773; *Robinson* v. *Stone,* 118 Ala. 273; *Wright* v. *Miller,* 8 N. Y. 9 (59 Am. Dec. 438). There may be authority to the contrary. But, granting, for the sake of argument, that the reversioners could have sued in equity to cancel the deed to the Bridwells, as a cloud on their title, their impression, that they could not do so, was no misapprehension or ignorance respecting any matter of fact, and though ignorance of law does not excuse anybody's conduct, it bears on the question of intention of the parties, so far as that may be material. They brought their suit promptly after the death of the father. He died in January, 1907, and this suit was brought in February, 1907. The relationship of parents and children existed. The plaintiffs were once infants, we know. When they became adults, the bill does not disclose. They may have been under the disability of infancy during the greater portion, or practically all, of the period of delay. We perceive also that the relation subsisting between them and their father and the defendants may, and most likely did, influence their conduct. No suit could have been instituted by them without involving him. Successful prosecution thereof might have precipitated an action against him for breach of his covenant of warranty. They might have been decidedly averse to involving him in trouble and annoyance, and so delayed action until after his death without any intention to relinquish their right. It is apparent that all the material facts are not disclosed by the bill. It is equally obvious, considering the allegations of that paper, that no element of estoppel or loss of material evidence exists. The defendants do not appear to have improved the land or expended money on it on the faith of the silence of the plaintiffs, nor does it appear that any change has taken place which made it inequitable upon their part to refrain from assertion of their rights. The right involved is disclosed by documentary evidence. Nothing is dependent upon oral testimony. The vital question is purely legal.

Under these circumstances, many of the principles of the doctrine of laches are inapplicable. The case is one in which the only circumstance relied upon is lapse of time, and this is

accompanied by other circumstances tending to negative the existence of any intention to abandon or relinquish the claim. Elements savoring of estoppel or loss of evidence, when they exist, reduce the length of time and apply the bar of laches after the lapse of a very short period. Under some circumstances, delay of only a few months, or even a few weeks, suffices. But these short periods are never adopted in the absence of such, or similar, circumstances. In the case of *Cranmer* v. *McSwords*, 24 W. Va. 594, Judge SNYDER made an exhaustive examination of the authorities bearing on this question, and, after having done so, said that when none of these elements, death of parties, loss of evidence or dependence upon oral testimony for the ascertainment of the rights of the parties, exists, and the court is satisfied that justice can be certainly attained notwithstanding the lapse of time, relief has been granted after a period longer than twenty years. In the syllabus of that case, the Court said: "If important facts rest upon mere parol testimony this will be a consideration of much weight, but if upon written or documentary evidence it will be entitled to very little weight." The same doctrine was enunciated in *Pusey* v. *Gardner*, 21 W. Va. 469. In that case, the effect of mere lapse of time, without more, was ascertained and declared. In point 7 of the syllabus, the Court said: "Lapse of time when it does not operate as a positive statutory bar, operates in equity as an evidence of assent, acquiescence or waiver." That proposition was deduced by a very able author from the English decisions. Kerr on Fraud & Mistake 305. Among the cases cited for it is that of *Pickering* v. *Stamford*, 2 Ves. Jr. 582, in which heirs were allowed to recover from trustees after a lapse of thirty years. The time and all the circumstances were considered, and, as it was found that nobody had been predjudiced by the delay, the further and vital inquiry was whether it appeared that the plaintiffs intended to relinquish or abandon their right. Like the plaintiffs in this case, they had been under an erroneous impression as to the state of the law. The Master of the Rolls said: "Upon full consideration I am satisfied, that it is impossible by any fair presumption to infer, that these parties being cognizant of their rights slept upon them, or ever intended to relinquish what I must say upon the whole complexion of the case they never knew they had a right to. That is a presump-

tion the circumstances almost afford: for if they had released, it is impossible not to suppose, the trustees who have kept such accurate accounts, would have had a release from them of this right as well as of their legacies and as well as they had from the heir. The law was very little known. Sir John Strange first determined it about fourteen years after the statute. If before that time parties not knowing the law had permitted the trustees to dispose of the property, I think a Court of Equity would not have punished them. This will was made seven years afterwards. All the circumstances shew, the parties did not know it. * * * * No jury could, I think, infer, that this demand was released. If that is so, the next question is, what inconvenience would arise, that ought to bar. The plaintiffs do not demand the interest already distributed through their default. If the accounts of the personal estate could not be now obtained, and it was impossible to know, to what the Plaintiffs were entitled, that is a sufficient reason for saying, they should not have it, and rob the charity, because they could not tell what belonged to them and what to the charity. But that is unfortunately not the case. Then the only inconvenience will be, that the charity will now cease to have the benefit of so much. That is certainly to be lamented; but it will not involve any person in difficulties to be attributed to the neglect of the Plaintiffs. Therefore desiring to be understood by no means to give any countenance to these stale demands, any more than I did in *Hercy* v. *Dinwoody,* or Lord Camden in *Smith* v. *Clay,* or Lord Thurlow in *Lord Deloraine* v. *Browne,* but upon the circumstances, that there is nothing inducing great public or private inconvenience, that the accounts are found, and that the trustees are not called on to account for what has been disbursed, I am bound to decide in favour of the Plaintiffs." The whole doctrine of laches, as it is understood and applied in this country, was developed by the English decisions. The opinion just quoted from reviews and analyzes the former decisions rendered by Lords Camden and Thurlow, and clearly points out all the elements of it. It shows that when nothing appears but lapse of time and circumstances, not working prejudice or injury to the defendant, in case relief should be granted, the only inquiry is whether, in view of all the facts, the plaintiffs have abandoned or relinquished their right. Substantially this doctrine was stated in *Hale* v. *Hale,*

62 W. Va. 609. It is also asserted and applied in *Southern Railway Co.* v. *Gregg,* 101 Va. 308, holding as follows: "Laches is only permitted to defeat an acknowledged right on the ground that it affords evidence of the abandonment of the right. The doctrine, therefore, can have no application to a case where a demand has been continuously asserted and as continuously acknowledged." In *Bell* v. *Wood,* 94 Va. 677, the court said: "Generally, if the sum sought to be recovered is certain, the transaction has not become obscure, and there has been no such loss of evidence as will be likely to produce injustice, a court of equity will not refuse relief merely because there has been delay in asserting the claim." For the proposition that ignorance of law, superinducing delay in the assertion of a right, may operate to preclude a finding of laches, or to excuse it, if mere lapse of time be considered laches, *Cranmer* v. *McSwords* is authority. It says: "While ignorance of law will not prevent the operation of the statute of limitations, the rule is different in equity, a court of conscience; in such court moral as well as legal grounds may be considered, and a satisfactory moral excuse may be entertained, although it resulted from ignorance of law." This is reiterated in *Berry* v. *Weidman,* 40 W. Va. 36. For the proposition that family relationship which may have induced delay out of mere tenderness to the feelings of parties, will operate in the same way, *Jamison* v. *Rixey,* 94 Va. 342, and *Roberts* v. *King,* 10 Grat. 184, are authorities. These decisions emphasize the importance of the element of intention when the circumstances are such that the court is able to see that justice may be done between the parties, notwithstanding the lapse of time or delay in the assertion of the right. The distinction between laches and the statutes of limitations is as broad as the difference between courts of equity and courts of law. The very object and purpose of the whole system of equity jurisprudence is relief from the hardships inherent in the fixed and inflexible rules of the common law. If courts of equity should now adopt rules equally fixed and inflexible, such as the statutes of limitations, or adopt the fixed rules of the common law, the very purpose of their existence would be defeated. They must keep themselves free from such rules and retain the power to do justice in each case according to its circumstances, subject

to certain general principles, equitable in their nature and operation, and the limitations set by law.

The decisions of this Court afford a number of instances of preclusion from relief by comparatively short periods of delay; but they are all cases in which parol evidence was relied upon to establish mistake, or fraud, or other grounds of relief from contracts by way of rescission, cancellation or like. *Lafferty* v. *Lafferty,* 42 W. Va. 783; *Whittaker* v. *S. W. Va. &c. Co.,* 34 W. Va. 217; *Curtlett* v. *Newman,* 30 W. Va. 182; *Walker* v. *Ruffner,* 32 W. Va. 297; *Trader* v. *Jarvis,* 23 W. Va. 100. But these precedents are inapplicable, under the circumstances of this case, and, as Judge SNYDER said of cases of the class to which they belong, they have no direct bearing on the question under consideration.

What has been said here upon the subject of laches, is predicated upon the facts disclosed by the bill. What may be developed by the answer and the proof, if the case should proceed to a hearing on the evidence, we are unable to foresee. As the bill only partially develops the facts and circumstances, we do not decide finally whether the defense of laches can be made in such a case as this.

In respect to the authorities invoked in support of the contention that relief is barred by the statute of limitations, *Jones* v. *Lemon,* 26 W. Va. 629, *Swann* v. *Thayer,* 36 W. Va. 46, *Mullan's Adm'r* v. *Carper,* 37 W. Va. 215, *Gapen* v. *Gapen,* 41 W. Va. 422, *Woods* v. *Stephenson,* 43 W. Va. 149, *Phillips* v. *Piney Coal Co.,* 53 W. Va. 543, and *Ruckman* v. *Cox,* 63 W. Va. 74 (59 S. E. 760), it may be repeated that the statute does not run against a purely equitable demand, and that the right set up in the bill is of that character. Against such a right, however, a title acquired by adverse possession under color of title may be set up. The decisions cited in the brief for appellee enunciate this proposition. But the statute does not begin to run against the equitable demand from the time of the accrual thereof. If a trust is established, whether it be an express or a constructive one, and there is a breach of it, or an equitable cause of action for any reason accrues under it, the statute of limitations has no application and does not run against the *cestui que trust,* unless his demand is of such a nature that he could sue upon it in a court of law. However, in the case of

a trust in respect to real estate, there may be a disavowal and renunciation. And on this there may be commenced the process of acquiring good and complete independent title by adverse possession; but the process of acquiring such new title begins not with the mere disavowal of the trust. It requires something more. There may be, at the time of the disavowal, actual possession of the land, and often the repudiation itself consists of the giving of notice of hostile possession thereof. If the breach of the trust occurs before there is such possession, the statute does not then begin to confer new title. But if, after the disavowal of the trust or contemporaneously therewith, and in pursuance thereof and under the instrument of disavowal, it being a deed by the trustee to a stranger, such possession be taken and continued for the period of ten years, a new and independent title, superior to that of the equitable title, is thereby acquired and will prevail over it and defeat it, even in a court of equity; for courts of equity were never devised for the purpose of overriding or disregarding the law or legal estates, nor vested with power to do so. They have a wide field of operation within the law and accomplish results without, in any way, overturning, unsettling, or swerving common law rules, or denying legal rights. But no such title can be made out in this case. The possession was not adverse until after the death of Henry Depue, and this suit was brought in less than two months after his death.

For the reasons stated, the decree complained of is clearly erroneous and must be reversed and the cause remanded for further proceedings.

*Reversed and Remanded.*