ALPHONSE CARLONE

*v.*

UNITED MINE WORKERS OF AMERICA

WELFARE AND RETIREMENT FUND,

*et al., etc.*

(No. 13859)

Decided March 21, 1978.

*Robert F. Cohen, Jr.,* for appellant.

No appearance for appellee.

MILLER, JUSTICE:

This appeal involves the right of a retired coal miner to obtain pension benefits from the United Mine Workers of America Welfare and Retirement Fund of 1950. The trial court held in favor of Mr. Carlone, finding that the Trustees of the Fund had acted in an arbitrary and capricious manner in denying his application for pension benefits.

A brief historical background of the Fund is necessary for a resolution of the case. In 1947, the first Welfare and Retirement Fund was created as a part of the National Bituminous Coal Wage Agreement of 1947. Statutory authority for such funds is found in the Labor-Management Relations Act, 1947, commonly called the Taft-Hartley Act, 29 U.S.C.A. § 186(c)(5).

The Fund was administered by three Trustees who were given broad authority with respect to questions of coverage and eligibility. These provisions were stated in the Coal Wage Agreement of 1947, along with the principle that the Fund "is an irrevocable trust created pursuant to Section 302(c) of the 'Labor-Management Relations Act, 1947' and shall endure as long as the purposes for its creation shall exist."

The revenues for the Fund were derived from royalty payments made by the coal operators who were signatories to the National Bituminous Wage Agreement. The royalties were payable on each ton of coal mined.

On April 12, 1948, the Trustees established by Resolution No. 8 the following eligibility requirements for the 1947 Fund:

(1) Be an eligible and qualified member of the United Mine Workers of America, and

(2) Who on or after May 29, 1946, has attained the age of 62, and

(3) Who has served 20 years in the coal industry in the United States, and

(4) Who has retired from service in the bituminous coal industry on a date subsequent to May 28, 1946.

By an amendment to Resolution No. 8, adopted on April 7, 1949, the 62 age requirement was reduced to 60.

There is no dispute between the parties that Alphonse Carlone was born on June 22, 1888, and has thirty-three years' employment in the mining industry. His last segment of such employment was from November, 1948, to June, 1949, and he submitted his application for retirement to the Union District Office in Fairmont on August 4, 1949. The parties also agree that Carlone met the then existing eligibility standards for the 1947 Fund.

The parties diverge at this point because of certain changes that occurred in the 1947 Fund. On September 16, 1949, the Trustees of the 1947 Fund adopted Resolution No. 26 which provided for "a temporary suspension of payments by the Fund." The reason for this action was the diminished revenue being received by the Fund.

A new collective bargaining agreement, the National Bituminous Coal Wage Agreement of 1950, was executed on March 5, 1950. Under this agreement, the Welfare and Retirement Fund of 1950 was created and the Trustees of the 1950 Fund were authorized and directed to accept funds from the 1947 Fund.

Thereafter, on April 5, 1950, the Trustees of the 1947 Fund transferred to the 1950 Fund all of the assets of

the 1947 Fund. Two checks, one in the approximate amount of $23.6 Million Dollars and the other in the approximate amount of $867,000 Dollars, were paid from the 1947 Fund to the 1950 Fund. Appropriate legal documents which transferred all of the assets of the 1947 Fund to the 1950 Fund and required the 1950 Fund to assume the obligations against the 1947 Fund were executed.

On the same date, the Trustees of the 1950 Fund established new eligibility requirements for the 1950 Fund by Resolution No. 10. It is acknowledged by all parties that Mr. Carlone did not meet the new eligibility standards in one particular. He did not have one year of continuous employment in the mines immediately preceding his retirement. This was not a requirement at the time he applied for his pension in August of 1949.

Although Mr. Carlone applied at the Union District Office in August, 1949, his application was not received at the offices of the Fund in Washington, D. C., until October, 1949. He received no response from the Fund until August 3, 1950, when he was advised that he was not eligible because he had "not established proof of employment for one year in the Bituminous Coal Industry immediately preceding retirement."

Mr. Carlone wrote a number of letters through the years in an attempt to persuade the Trustees of the Fund to accept his application. Included in his correspondence were personal appeals to both John L. Lewis and Arnold Miller.

Suit was filed on April 22, 1975, in the Circuit Court of Marion County. The trial court rejected the defendant Trustees' contention that laches barred the suit and rendered a judgment for Mr. Carlone for back retirement benefits with interest.

In resolving the Trustees' obligation, we are not forced to navigate across an unchartered sea. A number of similar cases have been decided by the United States Court of Appeals for the District of Columbia.

In *Roark v. Lewis*, 401 F.2d 425 (D.C. Cir. 1968), the court characterized the Welfare Fund as a hybrid trust, stating:

> Trusts of the kind here involved, established under a specific exception to the Taft-Hartley Act, are hybrids which do not fit the categories of ordinary trusts. *See* Restatement (Second) of Trusts § 375, comment g (1959). While the specific beneficiaries are unnamed, characteristic of a charitable trust, the funds which make up the res were not paid to the trust as acts of beneficence. They were paid to the trust to satisfy a contractual duty owned by signatory operators to the signatory union and the employees it represented. Lewis v. Benedict Coal Corp., 361 U.S. 459, 465-466, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); Lewis v. Owens, 338 F.2d 740, 742 (6th Cir. 1964). [401 F.2d at 427]

Both sides agree that the rule which has evolved in the following federal cases is applicable to the instant case: that the Trustees' standards as to eligibility are to be tested by whether they are arbitrary or capricious. *Pete v. United Mine Workers of America Welfare and Retirement Fund of 1950*, 517 F.2d 1275 (D.C. Cir. 1975); *Roark v. Boyle*, 439 F.2d 497 (D.C. Cir. 1970); *Gaydosh v. Lewis*, 410 F.2d 262 (D.C. Cir. 1969); *Roark v. Lewis*, 401 F.2d 425 (D.C. Cir. 1968); *Kosty v. Lewis*, 319 F.2d 744 (D.C. Cir. 1963); *Danti v. Lewis*, 312 F.2d 345 (D.C. Cir. 1962).

*Kosty* provides a similar factual setting. Kosty filed for retirement in June, 1953. At that time he had thirty-one years in the mines divided into two periods: 1906-1924 and 1940-1953. In January, 1953, prior to his retirement, the Trustees adopted new eligibility rules which required that a retired miner have 20 years of mining service within the 25 years immediately preceding his retirement.[1] Kosty could not meet this standard, al-

---

[1] This standard was amended in March, 1953, to require 20 years of mining service within the 30 years immediately preceding retirement.

though he did meet the former standards of eligibility which required 20 years of service with one year continuous service before retirement.

The court held that the Trustees' change of eligibility standards without prior notice or period of grace within which Kosty could elect to take retirement was arbitrary and capricious.

*Roark v. Lewis* considered an eligibility standard adopted by the Trustees which required a miner to be employed by a signatory operator immediately prior to his retirement. Roark had 39 years of employment with the mining industry, 11 of which were with signatory operators. His last two years of employment were not with a signatory operator. The court concluded that the amendment was prima facie unreasonable, but remanded the case to the District Court to permit the Trustees to introduce evidence as to the reasonableness of the rule.

The District Court after further hearing granted judgment for the Trustees, finding that there was sufficient evidence to support the reasonableness of the eligibility requirement that a miner must have last worked for a period of at least one full year for a signatory employer. The case was again appealed. *Roark v. Boyle*, 439 F.2d 497 (D.C. Cir. 1970).

In *Roark v. Boyle*, the court concluded that the Trustees had failed to offer a reasonable explanation for the last year with a signatory employer eligibility rule. It recognized that while the rule might have had a rational basis in the early days of the Fund to prevent miners from gaining eligibility by returning to work for brief periods of time for non-signatory operators, this reason was no longer valid. The passage of time, together with the further rule requiring 20 years' service within the 30 years immediately preceding retirement, precluded miners who were already retired from coming back to work in order to gain access to the Fund. A similar finding of arbitrariness of the last-employer-as-a-signatory-employer rule was made in *Collins v. United*

*Mine Workers Welfare and Retirement Fund*, 439 F.2d 494 (D.C. Cir. 1970).

The Trustees here argue that their April 5, 1950, rule requiring one year continuous employment is not arbitrary. In order to bring Carlone within this rule, they take the position that Resolution No. 26, temporarily suspending payments from the 1947 Fund, operated as a suspension of all applications. We do not agree that the language of Resolution No. 26 can be stretched to accord this interpretation. It was directed only to the suspension of benefit payments and not the suspension of applications for benefits or to the eligibility requirements for such benefits.

The Trustees next advance the theory that the Fund in the Fall of 1949 was in serious financial difficulty and the suspension of further applications could be deemed reasonable on this basis. Certainly some of the force of this argument is undercut by the acknowledged fact that on April 5, 1950, the Trustees of the 1947 Fund transferred in excess of $24.5 Million Dollars into the 1950 Fund.

Much the same financial solvency argument was made in *Pete*, and was rejected on the basis that the Trustees had failed to prove the point:

> "Solvency is not in itself a basis for permitting an award, but when a trustee raises an issue of solvency to dilute or undercut an award that the court finds basically meritorious, he has the burden of showing such a detriment to the public interest." [517 F.2d at 1288-1289]

The Trustees elected to present their position by way of an affidavit from Walter P. O'Connell, a member of the staff of the Fund since December, 1947. Nowhere in his affidavit is there any discussion of the financial condition of the Fund in the Fall of 1949, or at anytime before or after that period. The trial court properly concluded that the Trustees did not sustain their burden on this point.

It is clear from *Danti, Kosty, Roark v. Lewis,* and *Roark v. Boyle,* that the denial of Carlone's pension by the Trustees in August of 1950 on the basis of an eligibility requirement adopted in April, 1950, was an arbitrary act, since his application which was filed in Washington in October, 1949, met the then existing eligibility requirements.[2]

The trial court was also correct in holding that the doctrine of laches would not bar Carlone's claim. Both sides acknowledge the fact that this is an equitable claim, since Carlone asserts he is a beneficiary of a trust fund. The leading case in this jurisdiction on the doctrine of laches is *Depue v. Miller,* 65 W.Va. 120, 64 S.E. 740 (1909). The central question in that case, as here, was what effect was to be given a long lapse of time in bringing a suit. This Court, after reviewing English authorities, made the following comment and then proceeded with a discussion of its early opinions:

> "It shows that when nothing appears but lapse of time and circumstances, not working prejudice or injury to the defendant, in case relief should be granted, the only inquiry is whether, in view of all the facts, the plaintiffs have abandoned or relinquished their right. Substantially this doctrine was stated in Hale v. Hale, 62 W. Va. 609, 59 S.E. 1056, 14 L.R.A. (N.S.) 221. It is also asserted and applied in Southern Railway Co. v. Gregg, 101 Va. 308, 43 S.E. 570, holding as follows: 'Laches is only permitted to defeat an acknowledged right on the ground that it affords evidence of the abandonment of the right. The doctrine therefore can have no application to a case where a demand has been continuously asserted and as continuously acknowledged.' In Bell v. Wood, 94 Va. 677, 27 S.E. 504, the court said:

---

[2] Since we have previously determined that Resolution No. 26 passed in September of 1949 did not affect the eligibility requirements or operate to suspend application, we need not decide the "agency" question of whether Carlone's filing at the District Union Office in Fairmont, West Virginia, in August of 1949, was sufficient to bind the Trustees of the 1947 Fund.

'Generally, if the sum sought to be recovered is certain, the transaction has not become obscure, and there has been no such loss of evidence as will be likely to produce injustice, a court of equity will not refuse relief merely because there has been delay in asserting the claim.' For the proposition that ignorance of law, superinducing delay in the assertion of a right, may operate to preclude a finding of laches, or to excuse it, if mere lapse of time be considered laches, Cranmer v. McSwords is authority. It says: 'While ignorance of law will not prevent the operation of the statute of limitations, the rule is different in equity, a court of conscience. In such court moral as well as legal grounds may be considered, and a satisfactory moral excuse may be entertained, although it resulted from ignorance of law.'" [65 W. Va. at 129-131, 64 S.E. at 744]

*Depue's* view that a mere lapse of time will not result in the bar of laches continues with unabated vitality to the present day. *State ex rel. Board of Education v. Dyer*, 154 W.Va. 840, 179 S.E.2d 577 (1971); *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 92 S.E.2d 891 (1956); *Acker v. Martin*, 136 W.Va. 503, 68 S.E.2d 721 (1951); *Pownall v. Cearfoss*, 129 W.Va. 487, 40 S.E.2d 886 (1946).

Here, the delay cannot support the Trustees' contention that Carlone abandoned his claim, as through the years he wrote the Trustees requesting reconsideration of his eligibility, pointing out to them that he was eligible when he filed for benefits in 1949. Furthermore, one has only to read the District of Columbia Federal Court cases cited herein to realize that the Trustees were constantly under attack in the courts on eligibility changes and that they developed a considerable body of statistical and historical information to meet these challenges so that there was no lack of available evidence.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Marion County.

*Affirmed.*